JAMES O. HEYWORTH, Plaintiff in Error, *vs.* THE INDUS-
TRIAL COMMISSION *et al.*—(MARGARET LEESON, De-
fendant in Error.)

*Opinion filed April 23, 1926—Rehearing denied June 2, 1926.*

1. WORKMEN'S COMPENSATION—*when inference may be drawn
that accidental death arose out of employment.* Although there is
no direct and positive evidence as to how an employee met his
death, yet where his body was found lying across the tracks over
which a train had passed on which he was last seen riding on a
flat-car supporting a crane which his employer was shipping, an
inference may be drawn that he fell from the train and was run
over and killed; and such accidental death may be said to have
arisen out of his employment where he was riding with the crane
in accordance with the instructions of his employer, for the pur-
pose of seeing that it was not delayed in shipment.

2. SAME—*written notice of accident is not required.* Section 24
of the Compensation act does not require written notice of the ac-
cident to be furnished the employer, and the mere fact that the
notice was not written will not be a bar to the maintenance of
proceedings by the injured employee.

3. SAME—*arbitrator may ask occasional questions of witnesses.*
In the hearing before the arbitrator or the commission the question-
ing of witnesses should generally be left to the attorneys where the
parties are so represented, but an arbitrator may ask occasional
questions for the purpose of clearing up doubtful matters, although
it is better practice for the arbitrator to suggest to counsel that
further examination be made of such doubtful points.

WRIT OF ERROR to the Circuit Court of Cook county;
the Hon. HARRY M. FISHER, Judge, presiding.

GEORGE A. SCHNEIDER, for plaintiff in error.

KELLY, BURNS & DALY, (JAMES D. MURPHY, of coun-
sel,) for defendant in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

The circuit court of Cook county confirmed an award
of compensation of $16 per week for a period of 265 weeks
and $10 in addition for one week, in favor of Margaret

Leeson, widow of Martin Leeson, deceased, and against James O. Heyworth, plaintiff in error. A writ of error was allowed to Heyworth by this court for a review of the record.

The record discloses the following facts: Martin Leeson, also referred to in the record as Martin Gleason, was and had been employed by James O. Heyworth for about three years previous to his death. His duties were that of "handy man" for Heyworth, who was engaged in the business of construction and engineering work. On June 9, 1922, Heyworth shipped from Chicago to Jim Falls, Wisconsin, a locomotive crane, to be used in construction and engineering work, and the deceased was employed to get in touch with the yardmaster at the various junctions through which the crane was being carried and to see that the crane was pushed through the junctions promptly as directed. It was within his duties to ride on the crane, or on the cars with the crane, if permitted to do so by the train crew. There was a cab on the crane and a seat within it. About 7:30 o'clock in the evening of June 9, 1922, Leeson was killed by being run over by the train on which the crane was being carried out of the yards of the Chicago and Northwestern Railroad Company in Chicago. The train was pushed out by an engine for a distance of about one hundred fifty yards at the rate of about five to ten miles an hour. It appears that Heyworth owned four freight cars which were used by him for shipping tools and other materials, and that these cars were attached to the freight train that carried the crane from South Chicago to Jim Falls, Wisconsin, and that the crane was on two of these cars.

The only evidence relating to the manner in which Leeson was killed was related by two of the train crew, Buckley and Rogers. Buckley testified that the crane was on railroad trucks and that the boom of the crane was supported by a flat-car immediately in front of the crane. He started to work on the train about 7:30 o'clock in the even-

ing and had orders to push the train out of the yards. He saw Leeson walking by the train and a few minutes later saw him on the car, referred to as an "idler," supporting the boom of the crane. Leeson was lying on the car, with his head about twelve inches from the end of the car and his feet towards its center. The car was about six feet wide and the boom resting on the idler took up a space of about two feet in the center, leaving on each side of the boom a space of about two feet. He last saw Leeson just after the train started moving, and he was still in the same position on the car. As the engine passed the witness he stepped on the foot-board of it and the engine pushed the train about one hundred fifty yards. The crane was about four car lengths in front of the engine. The destination of the crane was Butler, Wisconsin. After the engine had pushed the train out of the yards he got off of the engine at the office and the other conductor and brakeman went back with the engine. In about five or ten minutes the report came to the yard office that Leeson had been killed. Rogers testified that he was on his way back with the engine after the train had been pushed out of the yards. He saw the body of Leeson lying on the outside of the track and his limbs on the inside, and he thought the engine had run over Leeson when they pushed the train out of the yard, as there was no other traffic on the track. He did not see Leeson previous to this time.

O. R. Waldum testified: He is superintendent of construction for James O. Heyworth and has been such superintendent since 1918. He knew Martin Leeson in his lifetime and had known him since 1920. He was in charge of Martin Leeson and assigned him to his duties. He was arranging to ship for Heyworth from South Chicago to Jim Falls, equipment, part of which was a Bay City locomotive train. Leeson asked him about his running the crane through, and Waldum told him that it would be all right for him to do so. He stated that Leeson's duties in

connection with that job were to stay with the crane while the train was being made up in the yards, and to ride through on it, or with it, if the train crew would allow him to do so. If there was a passenger train leaving a few hours later which would reach the next division point ahead of the freight, "he would naturally take the passenger so as to beat the freight in and get acquainted with the yard-master at the next division point. To a certain extent it would be left to the judgment of Leeson. Mr. Leeson was not disobeying any orders of mine when he was staying with the train." He further stated that he had no doubt that Leeson was doing his duty by seeing the crane through the yards. On being asked if he wanted it embodied in his answer, "without a doubt he was doing his duty;" and, "Could you say whether or not he was disobeying any of your orders or instructions?" He answered, "No; I can't say that he was disobeying any of my instructions; he was riding the car through; that was his job."

It is admitted by plaintiff in error that the employer had actual notice, but not written notice, of the accident within thirty days of its occurrence. There is no evidence in the record that a written notice was served upon Heyworth, either personally or by registered mail, reciting the name and address of the injured employee and the approximate date and place and cause of the accident. It was stipulated before the arbitrator that the questions in dispute were whether or not the injury was sustained while the employee was engaged in interstate commerce and whether or not the injury arose out of and in the course of the employment. It was further admitted that Leeson sustained an injury resulting in his death; that a claim for compensation was made as required by statute; that the application for adjustment of compensation was filed with the commission on September 7, 1922; that the accident occurred June 9, 1922; that the annual earnings of the deceased for the year preceding his death were $1456; and

that the deceased left surviving him Margaret Leeson, his widow, and Mary and Martin Leeson, his children, aged seventeen and fifteen years, respectively.

It is contended by plaintiff in error that the evidence does not warrant a finding. that the accidental injuries of the deceased arose out of the employment. It is admitted that the deceased was in the course of his employment. It is argued that to say that the deceased received accidental injuries arising out of the employment is fantastic in the highest degree, and that the cause of his death can be arrived at only upon speculation and conjecture. A fair conclusion to be drawn from the evidence in this case is that the deceased came to his death by falling from the car on which he was riding and by being run over by the train of which his car was a part. In the case of *Vulcan Detinning Co. v. Industrial Com.* 295 Ill. 141, it is said: "It is impossible to lay down any rule as to the degree of proof which is sufficient to justify an inference being drawn, but the evidence must be such as would induce a reasonable man to draw such inference. Where the known facts are not equally consistent, where there is ground for comparing and balancing probabilities at their respective values, and where the more probable conclusion is that for which the applicant contends, the arbitrator is justified in drawing such inference." The rule laid down in the above case is very applicable to this case. In fact, we think that the natural inference to be drawn from the entire evidence in this case is that the deceased, while riding on the car beside the boom of the crane and in the position in which the witness Buckley last saw him, was thrown from the train by a jolt or whip of the train and fell between the car on which he rode and those following it, with his head outside the track and his limbs on the inside, and was run over and killed by the cars and engine following his car. The evidence is also clear that the accident arose out of his employment and in the course of it, and that plaintiff in error is not

relieved of the duty of paying compensation by reason of this alleged ground. There is no warrant for the speculation that some enemy threw him off or pushed him off the train. In dealing with facts in a record we only consider the facts and circumstances proved. There is not even proof in this case that he had any enemies or that there was anyone near him when he fell off the car. The deceased may have been guilty of negligence, but that is no defense in this case.

The argument that the Industrial Commission did not have jurisdiction of this case because a written notice was not served upon plaintiff in error within thirty days after the accident is not tenable. Section 24 of our Employment act is in this language: "No proceedings for compensation under this act shall be maintained unless notice of the accident has been given to the employer as soon as practicable, but not later than thirty days after the accident. In cases of mental incapacity of the employee, notice must be given within six months after such accident. No defect or inaccuracy of such notice shall be a bar to the maintenance of proceedings by arbitration or otherwise by the employee, unless the employer proves that he is unduly prejudiced in such proceedings by such defect or inaccuracy. Notice of the accident shall state the name and address of the employee injured, the approximate date and place of the accident if known, and in simple language, the cause thereof; which notice may be served personally or by registered mail, addressed to the employer at his last known residence or place of business: *Provided, that the failure on the part of any person entitled to such compensation to give such notice shall not relieve the employer from his liability for such compensation, when the facts and circumstances of such accident are known to such employer, his agent or vice-principal in the enterprise.*"

The italicized portion of the above section, or the proviso, was omitted in the 1921 amendment of the above sec-

tion. The amendment of 1925 of this section expressly provides that the foregoing notice may be given orally or in writing. It is argued that under this section as amended in 1921 the notice must be a written notice. Nowhere in the section, even in the 1921 act, is written notice expressly provided. In *Yellow Cab Co.* v. *Industrial Com.* 315 Ill. 235, we held that such a notice that did not show the approximate date and place of the accident was sufficient unless the employer proved that he was unduly prejudiced thereby. We also held in *Jefferson Printing Co.* v. *Industrial Com.* 312 Ill. 575, that where the employer had actual notice of the employee's illness, and that the foreman visited him at his home, etc., that no legal question should arise with reference to the notice of the cause of the death of the employee. We do not think that the statute requires a written notice, in the first place, by the language of said section of 1921, and that there was no intention by the legislature to so provide, and that the amendment of 1925 so shows. In the second place, if the statute does provide for a written notice, that defect, or any other defect in the notice, should not bar the proceedings unless the employer proves that he is prejudiced by such defect. There is no claim in this record that the plaintiff in error did not have full and adequate notice of this accident and how it occurred, and there is no claim of prejudice whatever because of the fact that the notice was not a written notice.

Complaint is made that the arbitrator questioned the witnesses in some particulars instead of allowing the attorney for the defendant in error to do so. Where the parties are represented by attorneys, either before the arbitrator or the commission, it ought to be left to the attorneys to do the questioning of the witnesses in the main, but it would be permissible at any time for the arbitrator to ask occasional questions for the purpose of clearing up doubtful matters, and even under such circumstances it would generally be better practice for the arbitrator or the commis-

sion to suggest to counsel that further examination be made on such doubtful points. It does not appear from this record that the plaintiff in error was prejudiced by the arbitrator's action in that regard, and this complaint is without merit.

No argument is made in this case upon the question of the employee being engaged in interstate commerce, and this point is therefore waived by plaintiff in error. Besides, we do not think that there is any merit in this point.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*