YELLOW FREIGHT SYSTEMS, Petitioner-Appellant, *v.* THE INDUS-
TRIAL COMMISSION *et al.* (Lurton H. Pepper, Respondent-Appellee).

Second District (Industrial Commission Division)   No. 2—84—0122WC

Opinion filed June 13, 1984.

Richard C. Hayden and Rochelle A. Funderburg, both of Craig & Craig, of Mattoon, for appellant.

Gerald F. Tuite and Jason Gesmer, both of Tuite, Morrissey, Gesmer & Finnegan, of Rockford, for appellee.

JUSTICE WEBBER delivered the opinion of the court:

Claimant, Lurton Pepper, filed an application for adjustment of a claim seeking workers' compensation benefits against his employer, Yellow Freight Systems, Inc. (Yellow). An arbitrator found Pepper to be totally and permanently disabled and awarded him $304.21 per

week for life, together with $220 for necessary medical expenses. On review before the Industrial Commission, the decision of the arbitrator was affirmed and the Commission added $5,942.22 for necessary medical expenses. On further review the circuit court of Ogle County confirmed the Commission and this appeal followed.

Pepper was a truck driver for Yellow. On August 5, 1977, he made a run from Palatine to Effingham, starting about 3 a.m. After about 30 minutes in Effingham, he started back for Palatine about 9 a.m. Early in the return trip he experienced difficulty with his rig and stopped at the roadside to crank a dolly pad up since it was too near the pavement and was scraping. The dolly was covered with dirt and grime and it required considerable physical exertion to do the cranking. Upon resuming driving Pepper experienced chest pain which spread to his left arm, and he began to perspire. He again pulled off the road and another Yellow driver who was proceeding behind him also stopped to see what was wrong. They then went on to a truck stop, where Pepper obtained some across-the-counter medication for indigestion and then continued the run to Palatine. There was another stop for additional patent medicine, and Pepper was able to complete the run, although experiencing varying degrees of pain and discomfort throughout.

Upon arriving at Yellow's terminal in Palatine, Pepper, according to his testimony before the arbitrator, informed the operations manager, Sutton, of his pain and illness. This was corroborated by the other driver accompanying him. On the next day, August 6, Pepper again experienced pain and called Yellow by telephone to say that he was unable to work. He then went to the Rochelle Community Hospital, where his family physician admitted him into the intensive care unit. Initial hospital tests were inconclusive, but angina or myocardial infarction were suspected. He was released from the hospital on August 13, 1977, and remained at home with medication and orders to rest. On September 11, 1977, he was admitted to St. Anthony's Hospital in Rockford under the care of a cardiologist, where a coronary angiogram was performed. This test showed an occluded right coronary artery and a hypokinetic inferior wall, suggesting that Pepper had suffered a heart attack.

At arbitration Pepper testified that either from the Rochelle hospital or immediately upon his release he phoned Sutton to inform him that "they found out it was my heart." He also testified that he phoned the same information to the night operations manager of Yellow, Cirone by name. Pepper's wife testified that she, too, had phoned Cirone to tell him that her husband had suffered a heart attack.

At the hearing on review before the Industrial Commission, both Sutton and Cirone denied receiving any such phone calls. However, Sutton stated that he knew, although he was not sure how, Pepper had suffered a heart attack. This knowledge came to him approximately one week after August 5.

Between the time of hearing on arbitration in July 1981 and the hearing on review in October 1981, Pepper underwent coronary bypass surgery. The medical bills for this were introduced at a further review hearing in April 1982.

On appeal in this court Yellow has raised two issues: (1) whether proper notice was given to it within the statutory 45-day period, and (2) whether the Commission's determination that Pepper is permanently and totally disabled is against the manifest weight of the evidence.

As to notice: section 6(c) of the Workers' Compensation Act (Ill. Rev. Stat. 1981, ch. 48, par. 138.6(c)) provides in pertinent part:

"(c) Notice of the accident shall be given to the employer as soon as practicable, but not later than 45 days after the accident. ***

* * *

No defect or inaccuracy of such notice shall be a bar to the maintenance of proceedings on arbitration or otherwise by the employee unless the employer proves that he is unduly prejudiced in such proceedings by such defect or inaccuracy.

Notice of the accident shall give the approximate date and place of the accident, if known, and may be given orally or in writing."

Compliance with this section is accomplished by placing the employer in possession of the known facts within the statutory period. (*Seiber v. Industrial Com.* (1980), 82 Ill. 2d 87, 411 N.E.2d 249.) Notice to management-level employees will suffice. *Atlantic & Pacific Tea Co. v. Industrial Com.* (1977), 67 Ill. 2d 137, 364 N.E.2d 83.

■■ Pepper's testimony is that he informed Sutton, apparently a management employee, of his illness directly upon his return to Palatine. This was corroborated by his fellow driver. He also testified that he telephoned Cirone either from the hospital or upon his release August 13, well within the 45-day limit. Pepper's wife stated that she also communicated with Cirone on the subject from the hospital. Both Sutton and Cirone denied receiving these communications, but in contradiction, Sutton stated that he knew of Pepper's heart attack approximately one week after it occurred. This indicates actual knowledge, regardless of the source. Actual knowledge constitutes notice to

the employer to the extent of that knowledge. *Heyworth v. Industrial Com.* (1926), 321 Ill. 298, 151 N.E. 920.

■ Furthermore, the Commission heard both Sutton and Cirone at the hearing on review. It is its particular function to judge the credibility of witnesses and to weigh the evidence. (*Moore Electric Co. v. Industrial Com.* (1980), 83 Ill. 2d 43, 413 N.E.2d 1262.) In the instant case it is apparent that the Commission elected to believe Pepper, and we cannot say that such a result is contrary to the manifest weight of the evidence. Yellow did receive proper notice within the statutory period.

■ As to the disability issue, we find that Yellow has waived the matter. The Commission's order states, "The issues on Review are whether Petitioner gave Respondent notice within the requirements of section 6(c) of the Act, and the amount of necessary medical expenses." The record shows that only four witnesses appeared before the Commission on review; Sutton, Cirone, Mrs. Pepper and Pepper himself; the first three testified only on the matter of notice. Pepper testified as to his treatment at St. Anthony's Hospital and his medical records from there (and Swedish-American Hospital where the angiogram was actually performed) were admitted. The medical bills for the coronary bypass operation were later admitted by agreement.

It is thus apparent that the matter of total and permanent disability was never raised before the Commission. In her opening statement before the circuit court, counsel for Yellow stated in part, "The issues on review are, whether Mr. Pepper gave Yellow Freight notice of an accident, and the amount of necessary medical expenses. *** The issue here today is whether Mr. Pepper gave notice within the requirements of Section 6—C of the Workman's [*sic*] Compensation Act."

The circuit court appears to have raised the issue of total and permanent disability *sua sponte*. At the conclusion of the argument before it, the following colloquy appears after a discussion regarding the medical bills for the bypass operation:

> "THE COURT: Dr. Dougherty's letter of 9/12/78 indicates that he could return to work, but he can't pass the physical from the D.O.T. Does that mean he's permanently disabled?
>
> MR. GESMER [Yellow's counsel]: Not just because of that, because the doctor's opinion currently, at the time of this trial, was that he was not able to work in any capacity. They are just holding him a total disability because he couldn't pass the D.O.T. The Commission has the ability to determine if he can do any work, not necessarily the job he was doing when he had the accident.

THE COURT: I'd have to say Dr. Warmoltz from Warmoltz Clinic in Oregon, Illinois, whose [*sic*] had four heart attacks and has angina sometimes, he goes water skiing and he chops wood every day and he says the heart is a muscle and you got to make it work.

MR. GESMER: Well, I can't comment on Dr. Warmoltz.

THE COURT: He should be very proud at 83 to be doing these—he had his first heart attack in 1942 and he was affiliated with Rockford Memorial Hospital and the Catherine Shaw Bethea Hospital in Dixon, performed surgery until 1978.

MR. GESMER: That's very good.

THE COURT: If we could send some of those people who think they have a problem to eat less and exercise more and —."

Later on, the court sent a letter to counsel which states in part:

"It's my opinion that there is a factual matter which should be determined by this court which may or may not have been determined by this court which may or may not have been determined by the Industrial Commission; That question is whether or not the fact that the doctors say that the employee was suffering from angina pectoris was or was not directly caused by his employment."

Still later, the court held a conference telephone call with counsel. It was transcribed and the following appears:

"THE COURT: Well, let me look at my letter.

MR. GESMER: Dated June 30th.

THE COURT: I think what I really want you to talk about is whether the nature of this illness is really related to his occupation or whether or not it was an oncoming thing because of the fact that he was getting older. In other words, is there any correlation between his angina and his occupation, whether or not the Commission took that into account when they made their ruling."

The trial court far overstepped its bounds in raising a question which was not before the Commission. "On *certiorari* the circuit court considers a case only on the record made before the Industrial Commission and has no authority to consider evidence not presented therein." *Gunthrop-Warren Printing Co. v. Industrial Com.* (1979), 74 Ill. 2d 252, 255, 384 N.E.2d 1318, 1319.

The question of permanent and total disability was not properly before the circuit court, and it is not before this court. Yellow waived the matter by not presenting it to the Commission. The trial court

was correct, albeit for the wrong reason.

The decision and judgment of the circuit court of Ogle County affirming the order of the Industrial Commission is affirmed.

Affirmed.

SEIDENFELD, P.J., McNAMARA, BARRY, and KASSERMAN, JJ., concur.