UNITED STATES STEEL CORPORATION-SOUTH WORKS, Appellee, v. THE INDUSTRIAL COMMISSION *et al.* (Betty Jo De La Garza, Widow of Paul V. De La Garza, Deceased, and mother and natural guardian of Mark Brice De La Garza *et al.*, Appellants).

First District (Industrial Commission Division)   No. 1—85—1867WC

Opinion filed August 27, 1986.

Cornfield & Feldman, of Chicago (Linzey D. Jones and Thomas J. Mallers, of counsel), for appellants.

Rooks, Pitts & Poust, of Chicago (Daniel P. Socha and Todd L. Shivers, of counsel), for appellee.

JUSTICE WEBBER delivered the opinion of the court:

This is an appeal by the widow and dependent children of a deceased steelworker who succumbed to injuries after being doused by molten steel at United States Steel's South Works plant (U.S. Steel). At the time of his death, decedent was covered by a group life insurance policy, a fringe benefit under the collective-bargaining agreement between U.S. Steel and the National Steelworkers Union. The policy expressly provided that the decedent was entitled to designate the beneficiary of the life insurance proceeds and that he could change that designation at will.

Decedent's widow and children filed an application for adjustment of claim with the Industrial Commission. The arbitrator awarded death benefits, burial expenses, and attorney fees. U.S. Steel contended that the proceeds from the life insurance policy payable to the deceased's beneficiary, in this case his widow, should be set off against the amount of death benefits payable under the authority of section 4(i) of the Workers' Compensation Act (Act). (Ill. Rev. Stat. 1983, ch. 48, par. 138.4(i).) The arbitrator denied the setoff. On review, the only issue raised was the company's right to a setoff. The Commission affirmed the arbitrator and, in addition, awarded interest to the claimants.

On review in the circuit court, U.S. Steel again urged its entitlement to the setoff. In defense, for the first time, claimants argued that the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. sec. 1001 et seq. (1982)) preempted section 4(i) of the Act, rendering it unconstitutional or unenforceable. U.S. Steel objected on the basis that this issue had neither been raised before the arbitrator nor the Commission. The circuit court, without deciding the ERISA question, nevertheless, set aside the decision of the Commission and awarded U.S. Steel a setoff on death benefits. Petitioners appeal.

Section 4(i) of the Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.4(i)), which became effective on September 15, 1980 (Pub. Act 81—1482, sec. 1, eff. Sept. 15, 1980), provides:

"If an employer elects to obtain a life insurance policy on his employees, he may also elect to apply such benefits in satisfaction of all or a portion of the death benefits payable under this Act, in which case, the employer's compensation premium will be reduced accordingly."

The petitioners argue that there is no evidence that the company made an "election" within the meaning of the Act. The facts reveal that a collective-bargaining agreement had been in effect for a number of years prior to decedent's death. As a particular contract ex-

pired, a successive contract would be entered between the employer and the union. The fringe benefit of group life insurance had been an element of the benefit package for many years prior to decedent's death. The company paid the premiums and the employee chose the beneficiary. The contract in effect on the date of the employee's death was entered into several months after section 4(i) of the Act became effective.

U.S. Steel argues that the mere existence of the policy for which the company paid the premiums, irrespective of its relationship to a collective-bargaining agreement, is an "election" under section 4(i) to obtain a life insurance policy on the employee. U.S. Steel further maintains that, once the employee died and, by the terms of the policy, his widow became the beneficiary of the proceeds, the company promptly "elected" to apply those benefits in satisfaction of a portion of the death benefits otherwise payable to the widow and children.

Petitioners counter that the Act provides two methods by which the company may make an election; neither of which occurred here. The employer may either purchase additional, supplemental life insurance for the employee without regard to any life insurance which may be provided to an employee as part of a collective-bargaining agreement, or the company can negotiate this potential setoff as a part of the benefit package encompassed within the collective-bargaining agreement.

We have addressed the matter of what constitutes an "election" under section 4(i) of the Act in the case of *United States Steel-South Works v. Industrial Com.* (1986), 147 Ill. App. 3d 398, which considered the identical collective-bargaining agreement and group insurance policy as that involved here. In *Cimochowski*, we stated that, since the life insurance was part of the employment package which the company was contractually obligated to provide pursuant to its agreement with the union, obtaining the life insurance was not the assertion of a right of or election under the Act because U.S. Steel would have breached its contract if it had not obtained the insurance, and the decision to obtain the insurance was jointly made by the company and the union. Thus, because respondent did not have the right not to obtain the life insurance and because the choice to obtain it was not the company's alone, U.S. Steel did not "elect" to obtain life insurance under the plain terms of the Act.

This court also considered the question of the company's right to subsequently "elect" to apply life insurance proceeds against death benefits. Noting the terms of the policy which gave the employee the

absolute right to choose the beneficiary, and the absurd result which would obtain if the company were allowed to set off benefits when the designated beneficiary of the policy was someone other than the widow or dependent children of the deceased employee, we held that the more reasonable interpretation of the Act required that such an election could only occur "if the employer is the policy's sole beneficiary, or if the policy, regardless of who might otherwise be the beneficiary, provides that if death is compensable under the Workers' Compensation Act, the employer may elect to apply the policy's benefits in satisfaction of death benefits under the Act." *United States Steel-South Works v. Industrial Com.* (1986), 147 Ill. App. 3d 398.

■ We also seriously question the characterization of section 4(i) as a setoff to death benefits. Benefits payable by the employer to the widow and dependents are set out in section 7 of the Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.7). Section 4(i), on the other hand, is contained within section 4 of the Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.4) which relates exclusively to the relationship between the employer and the Industrial Commission. Accordingly, we believe section 4(i) cannot be interpreted to permit interference with or diminution of benefits otherwise payable under section 7. Section 4(i) only affects the relationship between the employer and the Commission by permitting an employer to reduce its compensation premiums. Section 4(i) may affect an employer's liability but it does not act to reduce death benefits payable under section 7. This interpretation of the Act necessarily obviates the potentially absurd results which might occur under U.S. Steel's characterization of the Act.

■ Since the question here is virtually identical to that presented in *Cimochowski*, we are necessarily constrained to reach the same result. Accordingly, we hold that under the facts present, U.S. Steel did not make either an election to provide life insurance coverage or an election to apply benefits as an offset within the plain meaning of the statute.

■ The petitioners have also raised an issue pertaining to Federal preemption. They argue that ERISA (29 U.S.C. sec. 1001 *et seq.* (1982)) preempts section 4(i) because it relates to employee benefit plans. Initially, we note that this argument was raised for the first time in the trial court and, although the trial court may have jurisdiction to entertain a claim for relief predicated upon ERISA (*Pierce v. P.J.G. & Associates, Inc.* (1986), 112 Ill. 2d 535, 494 N.E.2d 482), as U.S. Steel correctly points out, the issue may be considered waived because the circuit court, on *certiorari*, has no authority to consider evidence or arguments not presented before the Commis-

sion. (*Gunthorp-Warren Printing Co. v. Industrial Com.* (1979), 74 Ill. 2d 252, 384 N.E.2d 1318; *Yellow Freight Systems v. Industrial Com.* (1984), 124 Ill. App. 3d 1018, 464 N.E.2d 1256.) Furthermore, our holding in this case obviates the need to address the issue presented. Nevertheless, because the issue has arisen in the past (see *United States Steel-South Works v. Industrial Com.* (1986), 147 Ill. App. 3d 398) and is of some substantial significance, we decline to apply the rule of waiver and elect to address the issue presented. See *United States Steel Corp. v. Industrial Com.* (1985), 133 Ill. App. 3d 811, 478 N.E.2d 1108.

The Federal legislation embodied in the comprehensive statutory framework known as ERISA subjects to Federal regulation, in broad terms, plans providing employees with fringe benefits. Employee benefit plans as defined under that Act include both welfare and pension plans. An "employee welfare benefit plan" is defined as any program that provides benefits for contingencies such as illness, accidents, disability, death, or unemployment. (29 U.S.C. sec. 1002(1) (1982).) Section 514(a) of ERISA (29 U.S.C. sec. 1144(a) (1982)), preempts any and all State laws insofar as they may now or hereafter relate to any employee benefit plan covered by ERISA. State laws regulating insurance, banking, or securities are exempt from this preemption provision as are State criminal laws. (29 U.S.C. secs. 1144(b)(2)(A), (b)(4) (1982).) Furthermore, section 4(b)(3) of ERISA exempts from ERISA coverage employee benefit plans that are maintained solely for the purpose of complying with applicable workers' compensation laws or unemployment compensation or disability insurance laws. 29 U.S.C. sec. 1003(b)(3) (1982); *Shaw v. Delta Air Lines, Inc.* (1983), 463 U.S. 85, 90-92, 77 L. Ed. 2d 490, 496-98, 103 S. Ct. 2890, 2896-97.

The leading case in the field is *Alessi v. Raybestos-Manhattan, Inc.* (1981), 451 U.S. 504, 68 L. Ed. 2d 402, 101 S. Ct. 1895. In that case, New Jersey enacted an amendment to its Workers' Compensation Act which provided that the right of compensation granted by the Workers' Compensation Act might be set off against disability pension benefits but could *not* be set off against employee retirement pension benefits or payments. Noting the explicit congressional statement about the preemptive effect of ERISA, the Supreme Court determined that the New Jersey statute had to be characterized as a State law that "relates" to an employee benefit plan.

The Supreme Court reached its conclusion on the basis that the New Jersey statute eliminated one method for calculating pension benefits—integration—that was permitted by Federal law. In review-

ing the history of ERISA, the Supreme Court pointed out that Congress did not prohibit integration, a calculation practice under which benefit levels are determined by combining pension funds with other income streams available to the retired employee. Since ERISA permitted integration of pension funds with other public income maintenance monies for the purpose of calculating benefits, and Internal Revenue Service interpretations approved integration with the precise type of funds addressed by the New Jersey workers' compensation amendment, the legal effort to ban certain pension-fund offsets applied directly to the calculation technique and was unenforceable because ERISA preempted State laws which related to this calculation. The court found that it was of no moment that New Jersey intruded indirectly through a workers' compensation law rather than directly through a law called "pension regulation."

Another consideration which buttressed the court's conclusion was its observation that ERISA leaves integration, along with other pension-calculation techniques, to the discretion of pension-plan designers. Since pension plans emerge from collective bargaining, there was an additional, substantial Federal interest in precluding State interference with labor-management negotiations. As a matter subject to collective bargaining, pension terms themselves became expressions of Federal law requiring preemption of intrusive State laws.

In the subsequent case of *Shaw v. Delta Air Lines* (1983), 463 U.S. 85, 77 L. Ed. 2d 490, 103 S. Ct. 2890, the Supreme Court further clarified the scope of preemption under ERISA. The court noted that the breadth of section 514(a)'s preemptive reach was substantial and, citing Black's Law Dictionary, stated that a law "relates to" an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan. In *Shaw*, the initial question was whether ERISA preempted a New York human rights law requiring employers, among other things, to pay certain benefits to employees disabled by pregnancy. Initially, the court had no trouble finding that the law clearly related to benefit plans covered by ERISA. The issue then became whether any of the narrow exceptions to the broad sweep of ERISA saved the law from preemption.

The New York statute prohibited, among other practices, employment discrimination on the basis of sex, and the New York Court of Appeals had held that an employer whose employee benefit plan treated pregnancy in a different manner from other nonoccupational disabilities engaged in sex discrimination within the meaning of the law. After considering in some detail the problem of coordination be-

tween the Federal Equal Employment Opportunity Commission (EEOC) and the State administrative body charged with handling claims of employment discrimination, the court held that Federal law preempted this aspect of the New York statute. To the extent that this construction of ERISA caused problems in the administration of State fair-employment laws, the Supreme Court concluded those problems were a result of congressional choice and had to be addressed by congressional action.

A different problem was presented by the issue relating to disability benefits. The Supreme Court held that ERISA did not preempt that portion of the law requiring employers to provide particular benefits. The scheme contemplated by the State statute was an entirely separate benefit package or plan, purchased by the employer, completely distinct from any other benefits. As such, it was subject to an exception under ERISA as a "disability insurance law." The court reiterated that as long as the plan was a separately administered disability plan maintained solely to comply with a State law, it was exempt from ERISA coverage. The fact that State law also permitted employers to meet their State-law obligations by including such disability insurance in an ERISA plan did not make the State law wholly unenforceable as to employers who chose that latter option. In other words, while the State could not require an employer to alter its ERISA plan, it could force the employer to choose between providing State-mandated disability benefits in a separately administered plan or in an ERISA plan.

■ Given the precedent and guidance provided by the Supreme Court in these decisions, we conclude that section 4(i) of the Illinois Act is not preempted by ERISA. *Alessi* teaches that a pension-plan agreement may take State-mandated workers' compensation payments into consideration in situations where an employee is entitled to receive payments simultaneously either under State law or the ERISA package. To the extent that the employer wishes to "elect" to obtain insurance under the provisions of section 4(i), he is permitted to do so as part of the fringe-benefit package provided under the collective-bargaining agreement. The *Alessi* court found its conclusion bolstered by the fact that the benefits or setoffs grew out of a collective-bargaining agreement. While this would probably be the usual case, an ERISA plan otherwise instituted would not be treated differently.

Under this interpretation section 4(i) is nothing more than State legislative authorization for a potential offset to an employer's compensation premiums which did not previously exist under Illinois law.

Since section 4(i) does not prohibit something which is otherwise lawful under Federal law, it is not preempted. *Shaw v. Delta Air Lines, Inc.* (1983), 463 U.S. 85, 77 L. Ed. 2d 490, 103 S. Ct. 2890; *Alessi v. Raybestos-Manhattan, Inc.* (1981), 451 U.S. 504, 68 L. Ed. 2d 402, 101 S. Ct. 1895.

Under *Shaw* it is also clear that an employer can elect to purchase its own insurance policy on the life of the insured employee absolutely distinct and apart from any collective-bargaining agreement or any benefit plan which the company is contractually obligated to provide because of the union agreement. In such a case, ERISA would not be implicated because any such plan, maintained solely for the purpose of complying with an applicable State workers' compensation law, is expressly exempted from coverage. (*Shaw v. Delta Air Lines, Inc.* (1983), 463 U.S. 85, 77 L. Ed. 2d 490, 103 S. Ct. 2890.) It thus appears clearly apparent that under section 4(i), an employer may make an initial election to provide coverage in one of two ways, neither of which conflict with ERISA. The employer can negotiate the issue through the collective-bargaining process or it can purchase an independent life insurance policy against the life of the insured employee and, subsequently elect to offset its compensation obligations with the proceeds from the policy payable to the company as beneficiary.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the decision and award of the Industrial Commission is ordered reinstated.

Circuit court reversed; Industrial Commission order reinstated.

BARRY, KASSERMAN, LINDBERG, and McNAMARA, JJ., concur.