(No. 50563.

GUNTHROP-WARREN PRINTING COMPANY *et al.*, Appellees, v. THE INDUSTRIAL COMMISSION *et al.*—(Jennie Dolce, Appellant.)

*Opinion filed January 12, 1979.*

J. Michael Madda & John E. Flavin, of Chicago (Charles Wolff, of counsel), for appellant.

Gordon, Schaefer & Gordon, Ltd., of Chicago (Gilbert W. Gordon, of counsel), for appellees.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

An arbitrator for the Industrial Commission awarded the claimant, Jennie Dolce, burial expenses and 296 weeks of compensation in connection with the death of her husband, Thomas Dolce, pursuant to section 7 of the Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.7). The arbitrator found that at the time of his death Thomas Dolce was an employee of the Gunthrop-Warren Printing Company and that the accidental injuries he sustained arose out of and in the course of his employment. The Commission affirmed the award. On review, the circuit court of Cook County reversed, holding that on the date of Thomas Dolce's fatal accident no employer-employee relationship had existed between Dolce and respondent Gunthrop-Warren. Claimant appealed.

Deceased worked the night shift in Gunthrop-Warren's printing shop, located in a building owned by Gunthrop-

Warren near Wacker Drive in Chicago. The composing room where Dolce worked was on the second floor, and it was there that the employees received their payroll checks every Wednesday from Charles Thompson, the general foreman, who had a desk right inside the door. The shop was organized under a contract between Gunthrop-Warren and the Chicago Typographical Union. Some employees were in the habit of giving their paychecks to Bernard Dimeo, the union steward, who would cash the checks in a nearby bank, deduct the employees' union dues, and distribute the balance to the employees.

On March 12, decedent was notified that he would be laid off because of a reduction in the work force. He worked his last shift on Friday, March 14, the effective date of the layoff. He did not receive his final check at that time. Charles Thompson, the general foreman, testified that when an employee is laid off on a Friday the company's procedure is to issue his check the following Wednesday. Thompson said that, absent special instructions from the employee, he holds the check on Wednesday, and if the employee does not pick it up, he mails it to the employee's home. Thomas Peterson, the superintendent, testified to the same effect, explaining that it was impractical to pay night-shift employees at the end of their last shift. Peterson indicated, however, that at an employee's request, the company would mail the final check prior to the next regular payday on Wednesday. Thompson and Peterson both testified that they had received no instructions from decedent about his check.

On Wednesday, March 19, the first payday after his layoff, decedent went to pick up his paycheck. He parked his car on Wacker Drive around noon and met Dimeo, who was on his way to the bank to cash the employees' checks. Dolce accompanied Dimeo to the bank because he wanted to discuss his layoff with the union steward. The two men returned from the bank together and entered the elevator

in Gunthrop-Warren's building. Dolce got off at the second floor, having told Dimeo that he was going to pick up his check. As Dimeo got off the elevator, a man with a gun reached out and stopped him and demanded the bag of money he was carrying. The assailant grabbed for the bag and shot Dimeo in the arm. Dolce cried out "What's happening?" and the assailant turned and shot him also. Dimeo saw Dolce grab his stomach, double up and fall. Several more shots were fired. Dolce died of his wounds.

Respondent first contends that we must affirm the circuit court because the record does not contain a report of the hearing before the court and we therefore do not have access to the arguments of counsel and the court's comments. The cases that respondent cites in support of this proposition are inapposite because none of them involve proceedings under the Workmen's Compensation Act, in which the circuit court sits as a court of review. On *certiorari* the circuit court considers a case only on the record made before the Industrial Commission and has no authority to consider evidence not presented therein. (*Pontiac Chair Co. v. Industrial Com.* (1974), 59 Ill. 2d 261, 266; *Brown v. Industrial Com.* (1972), 51 Ill. 2d 291, 293; *Zimmerman v. Industrial Com.* (1972), 50 Ill. 2d 346, 350.) The record here contains the trial court's order setting forth the court's reason for reversing the Commission. The record does not show whether the proceedings before the court were transcribed. If they were, and if remarks made there were helpful, it was respondent's privilege to have them filed. Their absence does not in any way preclude our determining the correctness of the trial court's decision.

The principal issue is whether an employer-employee relationship existed between the Gunthrop-Warren Printing Co. and decedent on March 19, 1975. Respondent argues that this relationship terminated when decedent completed his last shift on March 14 and left the premises. Thereafter,

respondent reasons, the employee owed no further duty to Gunthrop-Warren under a contract of employment, and his relationship to his former employer was transformed into that of creditor to debtor. When Dolce went to pick up his check on the regular payday, he did not do so at Gunthrop-Warren's request; moreover, had he not picked the check up, the company would have mailed it to him. Respondent relies on *Waters v. Industrial Com.* (1932), 349 Ill. 214, and *Skelgas Co. v. Industrial Com.* (1948), 400 Ill. 322. In *Waters* the claimant was discharged from his job effective December 31, 1929. On March 5, 1930, after picking up his final pay voucher, he fell and was injured. This court set aside an award by the Industrial Commission in the claimant's favor, holding that no employer-employee relationship existed at the time of the accident and that the accident therefore did not arise out of and in the course of employment. In *Skelgas* the employee was injured, several days after the termination of his job, while on his way to a medical examination requested by the employer in connection with a workmen's compensation claim. This court held that the employee was not in the course of employment because "[t]he statutory right to an examination is entirely independent of the relationship of employer and employee." 400 Ill. 322, 328-29.

Claimant's position is that the employer-employee relationship did not abruptly terminate when decedent finished his last shift because an incident of the employment, Gunthrop-Warren's obligation to compensate him for services rendered, remained uncompleted. Gunthrop-Warren did not pay him at the end of his last shift for reasons of its own bookkeeping convenience, although the contract between the company and the union provided that laid-off employees be paid at the end of their final shifts. In going to pick up his check on the following Wednesday, he was accomodating himself to an established

procedure by which the company discharged its final obligation. Claimant relies on *Crane Co. v. Industrial Com.* (1922), 306 Ill. 56, where the employee, who worked in a factory, had remained home one payday because his baby was ill. He contacted his foreman by telephone and was informed that he would have to collect his pay in person. While leaving the plant after receiving his pay, he fell and was injured. This court held that at the time of the accident the claimant was acting in the course of his employment.

We do not find either of the decisions cited by the parties to be controlling. In *Skelgas* the former employee was not collecting his pay, and in *Waters* more than two months had elapsed between the claimant's last day of work and the date on which he collected his pay. It seems clear that the employer-employee relationship cannot be prolonged indefinitely by the dilatory behavior of the employee in collecting a final paycheck after it is available. That consideration, however, does not preclude us from determining that, for purposes of workmen's compensation coverage, the employer-employee relationship may persist for a reasonable time after a layoff to enable the employee to collect his pay, particularly when the employer has not made it available on the final day of work.

While the testimony here did not specify the expected duration of the layoff, the parties appear to assume that it was of indefinite duration. That factor distinguishes this case from *Crane Co.*, where the contract of employment was still in full force.

Whatever the expected duration of the layoff, however, we believe that the correct rule of law supports the claimant's position. The rule is stated succinctly by Professor Larson: "Compensation coverage is not automatically and instantaneously terminated by the firing or quitting of an employee." "The contract of employment is

not fully terminated until the employee is paid, and accordingly an employee is in the course of employment while collecting his pay." (1A A. Larson, Workmen's Compensation secs. 26.10, 26.30, at 5–228, 5–240 (1978).) As Larson notes, this rule was first laid down in an early English case, *Riley v. William Holland & Sons* (1911), 1 K.B. 1029. In that case an employee who had been discharged on Wednesday was held entitled to compensation for injuries she sustained when she returned on Friday, the regular payday, to collect her wages. Among the American decisions recognizing this rule are *Solo Cup Co. v. Pate* (Okla. 1974), 528 P.2d 300 (employee who quit on Wednesday and returned on Friday to turn in her company uniforms and collect her last paycheck was in the course of her employment when injured); *Massachusetts Bonding & Insurance Co. v. Industrial Com.* (1959), 8 Wis. 2d 606, 99 N.W.2d 809 (compensation affirmed where employee, fired for intoxication, returned four days later for his salary and his tools and fell down a flight of stairs, injuring himself); *Parrott v. Industrial Com.* (1945), 145 Ohio St. 66, 60 N.E.2d 660 (employee who could not collect his pay when he quit on Friday and returned for it the following Thursday, two days after the regular payday, and was then injured, was in the course of employment at the time of injury); *Pederson v. Industrial Com.* (1930), 201 Wis. 599, 602, 231 N.W. 267, 268 ("It is likewise held that even after his discharge the employee is under the protection of the act while presenting himself at the usual place for the purpose of receiving his pay"); *Perry v. Beverage* (1922), 121 Wash. 652, 209 P. 1102 (employer-employee relationship had not terminated when an employee of a logging camp who worked his last day and then went to collect his pay after dinner was struck by foreman in a dispute about wages).

Accordingly, we conclude that when Thomas Dolce, unable to receive his pay at the end of his last shift,

attempted to present himself at the usual place for payment on the next regular payday, the employer-employee relationship had not terminated and he was in the course of his employment. This conclusion is not altered by the fact that if the employee had not presented himself at the usual place his check would have been mailed to him. Likewise the fact that he accompanied the union steward to the bank is immaterial. There was uncontradicted testimony that the employee was on his way to collect his pay when he got off the elevator on the second floor of Gunthrop-Warren's building.

As we intimated earlier, we do not overrule the result reached in *Waters v. Industrial Com.* (1932), 349 Ill. 214, because there an unreasonable interval had elapsed between the employee's last day of work and the date on which he collected his pay. Nor do we undertake to prescribe the outer limits of the reasonable interval during which the employer-employee relationship will persist. We simply hold that it was not exceeded in this case.

The judgment of the circuit court of Cook County is reversed and the award of the Industrial Commission is reinstated.

*Judgment reversed;*
*award reinstated.*