Joseph C. ST. PIERRE

v.

FULFLEX, INC.

No. 83-334-M.P.

Supreme Court of Rhode Island.

June 4, 1985.

Raul L. Lovett, Lovett Morgera Schefrin & Gallogly, Ltd., Providence, for petitioner.

Joanne McTiernan, Anderson Henning & Anderson, Providence, for respondent.

## OPINION

BEVILACQUA, Chief Justice.

This is an employee's appeal from a decree of the Workers' Compensation Commission (commission) denying the employee's petition for total disability benefits.

The record reveals that Joseph C. St. Pierre (employee) filed an original petition for total disability benefits under the Workers' Compensation Act on May 3, 1979. In the petition,[1] employee alleged total incapacity arising out of his employment. The injury occurred on April 24, 1978, when his right hand was caught between a barrel and a scale while he was working on a slit machine.

The employee testified that on April 24, 1978, he notified the night superintendent of the injury but did not seek medical assistance. Further testimony indicated that employee worked continuously until he was laid off by Fulflex, Inc. (employer) effective October, 1978, and then employee retired in May 1979. On cross-examination, employee stated that he had been receiving unemployment compensation from the time he was laid off until it ran out. He further

---

**1.** An amended petition was filed on May 3, 1979, in which the date of total disability was changed to March 13, 1979.

testified that he went to Dr. Stanley Simon on March 13, 1979, because of pain in his right finger and that on March 16, 1979, Dr. Simon performed surgery on employee's right finger. After employee's last visit on April 12, 1979, Dr. Simon was of the opinion that employee would be capable of work in one or two weeks' time at the most.

The case was heard before a trial commissioner, who rendered a decision granting employee's petition for compensation for partial incapacity from March 13, 1979, to March 16, 1979, and total incapacity from March 17, 1979, to April 26, 1979. The employer appealed to the commission. The commission reversed the trial commissioner's decision finding that although employee did sustain an injury arising out of his employment on April 24, 1978, he continued to be gainfully employed until October 1978, when he was laid off. Accordingly, no evidence of a lack of earning capacity existed.

■ The commission referred to G.L. 1956 (1979 Reenactment) § 28–33–20 to ascertain employee's average weekly wage. The statute states

"the average weekly wage shall be ascertained by dividing the gross wages earned by the injured worker in employment by the employer in whose services he is injured during the thirteen (13) calendar weeks immediately preceding the week in which he was injured * * *."

Since this statute is free of ambiguity and expresses a clear and definite meaning, we must give the words of the statute their plain and obvious meaning when we review the commission's determination. *State v. Calise*, R.I., 478 A.2d 198, 200 (1984). To establish the date of injury in this action, we look to the date of incapacity. *Brown v. Hope Service Station, Inc.*, 122 R.I. 74, 75–76, 403 A.2d 1387, 1388 (1979). The record is clear that employee was laid off the thirteen weeks preceding the date of incapacity, March 13, 1979. Since he was not working for employer during these weeks, we affirm the commission's finding that employee had no earning capacity according to § 28–33–20.

Nevertheless, employee maintains that the injury to his finger was caused by constant use in his former employment and that he should not be denied total disability compensation just because the injury resulted in incapacity five months after he was laid off. The real issue to be addressed is not the method of determining employee's average weekly wage but whether employee can claim workers' compensation payments for total disability at the same time that he is collecting unemployment compensation.

On cross-examination, employee stated that he had been receiving unemployment compensation from the time he was laid off until it ran out. There was a gap of one month, from February 25, 1979, to March 23, 1979, during which he did not receive unemployment compensation and during which he claims he was incapacitated. His contention of incapacity, however, is totally belied by the fact that he again received unemployment compensation from March 24, 1979, right up until his retirement on May 12, 1979.

■ The payment of both unemployment compensation and workers' compensation payments for disability is effectively barred by G.L.1956 (1979 Reenactment) § 28–44–12, which provides that

"[a]n individual shall not be eligible for [unemployment] benefits for any week of his partial or total unemployment unless during such week he is physically able to work and available for work."

The Legislature, in enacting the Workers' Compensation Act and the Unemployment Security Act, clearly intended that both acts be construed together, thus prohibiting a worker from receiving both unemployment benefits and workers' compensation for the same period. *See Almstead v. Department of Employment Security, Board of Review*, R.I., 478 A.2d 980 (1984).

In the case before us, employee was eligible to retire. In the meantime, he was

laid off and received unemployment compensation until it ran out. He now claims that he is totally disabled and entitled to compensation for a "trigger finger," allegedly caused by its "constant use" in his former work. Since employee had to establish that he was physically able to work in order to receive unemployment compensation under § 28–44–12, it logically follows that he cannot also claim that he was incapacitated from his work-related injury, with the hope of additionally receiving workers' compensation benefits. We must adhere to the Legislature's intent and prevent employee from "double dipping."

Accordingly, we affirm the commission's finding that the employee cannot recover since he did not work the thirteen weeks preceding his date of incapacity, and we also find that he is precluded from recovery since he was collecting unemployment benefits during the relevant period.

The employee's appeal is denied and dismissed, the decree appealed from is affirmed, and the case is remanded to the Workers' Compensation Commission.