**Manuel E. SOUSA**

v.

**PROVIDENCE SUBARU COMPANY.**

No. 93–638–M.P.

Supreme Court of Rhode Island.

Dec. 22, 1995.

Daniel R. Sumner, Warwick, for Plaintiff.

Edward Sowa, Jr., Christopher Rawson, Providence, for Defendant.

## OPINION

MURRAY, Justice.

This case comes before us on the petition of the employee, Manuel E. Sousa (Sousa), for certiorari. Sousa seeks review of an order of the Workers' Compensation Court's Appellate Division (Appellate Division) affirming the trial court's denial of Sousa's workers' compensation claim. Sousa challenges the Appellate Division's finding that he was not an employee of the employer, Providence Subaru Company (Providence Subaru or Subaru), at the time his injury occurred, thereby making him ineligible for workers' compensation benefits. We quash the order of the Appellate Division and find as a matter of law that Sousa was an employee of Subaru at the time his injury occurred and is thus entitled to workers' compensation benefits.

The parties are in substantial agreement with respect to the facts of this case. On January 6, 1989, Sousa, who had worked as a service manager for Subaru, was laid off by Subaru because of lack of business. On January 9, 1989, Sousa filed for unemployment benefits with the Rhode Island Department of Employment and Training. Four days later, and before he received any unemployment compensation benefits, Subaru called Sousa, requesting that he go to Subaru's place of business to pick up his last paycheck. After entering Subaru's place of business, Sousa slipped and fell down a flight of stairs leading to the office where his check was waiting, causing back and leg injuries. Subsequently Sousa filed a claim for workers' compensation benefits with the Department of Workers' Compensation (the department), which denied the claim on the grounds that the injuries were not sustained in the course of his employment.

Sousa appealed from the department's denial of benefits to the Workers' Compensation Court, which held hearings on July 21, 1989, and September 7, 1989. After the submission of evidence, which included medical reports and testimony from Sousa, the trial judge entered his findings. By decree dated September 19, 1989, the trial judge denied and dismissed Sousa's petition for workers' compensation benefits. The trial judge re-

jected Sousa's assertion that since he had not received his last paycheck prior to the injury, the employer/employee relationship still existed on January 13, 1989, thereby entitling him to workers' compensation benefits. The trial court found that although other jurisdictions have adopted this reasoning to determine the termination point of the employment contract, that approach represented the "outer most limits of the course of [the] employment concept." The trial court further held that Sousa's voluntary election to file for unemployment benefits on January 9, 1989, confirmed that he had no further earning capacity with Subaru and that he had severed the employment relationship with Subaru at the time he filed for unemployment benefits. Thus, the trial court found that Sousa had failed to prove that the injuries sustained on January 13, 1989, arose out of or in the course of his employment with Subaru.

Sousa then filed an appeal of the trial judge's denial of benefits to the Appellate Division of the Workers' Compensation Court. A majority of the Appellate Division entered a final decree on November 3, 1993 affirming the trial court's decision to deny and dismiss Sousa's workers' compensation petition. Specifically, the Appellate Division found that the trial court was correct in not adopting the rule that the employment contract is not complete until the employee is fully paid. The Appellate Division was of the impression that the cases cited by Sousa for this proposition in other states went both ways on the issue and that the courts that did adopt the rule relied on the particular facts of those cases. Thus, on the basis of the trial court's finding that Sousa was terminated and had applied for unemployment benefits prior to the occurrence of the injury, the Appellate Division held that the trial court did not err in reaching its decision. The Appellate Division, relying on *St. Pierre v. Fulflex*, 493 A.2d 817 (R.I.1985), further held that since Sousa had applied for unemployment benefits, he "clearly held himself * * * eligible for [unemployment benefits] and for being ineligible for Workers' Compensation benefits."

Sousa then filed a petition for the issuance of a writ of certiorari, which was granted by this court on April 12, 1994. In his petition, Sousa claims that the Appellate Division erred in determining that the employment contract between Sousa and Providence Subaru was severed by Sousa's application for unemployment benefits. Additionally, Sousa asks this court to follow its sister states and hold that the employment contract is terminated by receipt of final payment by the employee. Sousa further asserts that although this court in *St. Pierre* held that one cannot collect unemployment benefits and workers' compensation benefits simultaneously, the instant case is distinguishable from *St. Pierre* because Sousa applied for, but had not yet received, unemployment benefits at the time his injury occurred. Thus Sousa asserts that his mere application for unemployment benefits is not a bar to his claim for workers' compensation benefits.

At the outset Providence Subaru asserts that the Appellate Division was correct in determining that Sousa had severed the employment contract when he filed for unemployment benefits, thereby making him ineligible for workers' compensation benefits. Alternatively, Subaru argues that even if this court were to hold that Sousa was an employee after filing for unemployment benefits, merely collecting his last paycheck was not within the scope of his employment because he was not furthering the interests of the employer.

Thus this court must address three issues: (1) whether the contract for employment terminates upon the employee's filing for unemployment benefits or upon the collection by the employee of his or her final paycheck, (2) whether the collection of a paycheck by an employee who has been terminated and has filed for unemployment benefits falls within the scope of employment, and (3) whether an employee's filing for, but not collecting, unemployment benefits bars him or her from collecting workers' compensation benefits under this court's holding in *St. Pierre*.

■ The issue of whether an employment contract terminates upon final payment of the employee or upon the application for unemployment benefits by the employee is a

question of first impression for this court. Sousa asks the court to adopt the position that many of our sister states have taken in holding that the employment contract is terminated upon final payment of the employee. On the basis of the unique set of facts in this case, we are compelled to agree with Sousa and reverse the Appellate Division's decision. We therefore hold that the employment contract between Sousa and Providence Subaru existed at the time Sousa's injury occurred and was not severed by Sousa's having filed for unemployment benefits. Accordingly, we hold that Sousa is entitled to workers' compensation benefits.

■ In adopting this position today we are persuaded by the general proposition as stated in 1 A. Larson, *The Law of Workmen's Compensation,* § 26.31 (1995), that the "contract for employment is not fully terminated until the employee is paid." In support of this position, we note that many states have adopted some form of this rule over the years. *See Oliver v. Faulkner Wood Co.,* 531 So.2d 675 (Ala.Civ.App.1988); *Peter Kiewit Sons' Co. v. Industrial Commission,* 88 Ariz. 164, 354 P.2d 28 (1960); *Phillips v. Unicare Amelia Island, Inc.,* 458 So.2d 50 (Fla.Dist.Ct.App.1984); *Gunthrop–Warren Printing Co. v. Industrial Comm'n,* 74 Ill.2d 252, 24 Ill.Dec. 160, 384 N.E.2d 1318 (1979); *Seventh Street Road Tobacco Warehouse v. Stillwell,* 550 S.W.2d 469 (Ky.1976); *Cyrus v. Vierson & Cochran, Inc.,* 631 P.2d 1349 (Okla.Ct.App.1981). However, if there is a delay between the termination or resignation of the employee and the collection of the final paycheck, the delay in collecting the paycheck must be a reasonable interval; any undue delay on the part of the employee would terminate the employment contract. *See 1 A. Larson, at § 26.32; See also Waters v. Industrial Commission,* 349 Ill. 214, 181 N.E. 828 (1932); *Olson v. Hurlbert–Sherman Hotel,* 210 App.Div. 537, 206 N.Y.S. 427 (1924).

The Supreme Court of Illinois has held in *Gunthrop–Warren Printing Co.,* that an employment contract was still operative five days after the employee had been laid off because the employee had not received his final paycheck. 74 Ill.2d at 258–59, 24 Ill.

Dec. at 163, 384 N.E.2d at 1321. The facts in *Gunthrop–Warren Printing* are fairly similar to those in the case at bar. In *Gunthrop* the employee was laid off by the employer and, five days later, after returning to the employer's business to pick up his last paycheck, was killed at the employer's business in a robbery immediately after being paid. *Id.* at 254–55, 24 Ill.Dec. at 161, 384 N.E.2d at 1319. The Supreme Court of Illinois found that because the employer had not paid the employee at the time of his layoff, the employment contract was not terminated at the time of the accident. *Id.* at 258–59, 24 Ill. Dec. at 163, 384 N.E.2d at 1321. Although the court recognized that a three-month delay by the employee was unreasonable and would not extend the employment contract, it held that a five-day wait was a reasonable waiting period which the employment contract will survive. *Id.* at 259, 24 Ill.Dec. at 163, 384 N.E.2d at 1321.

■ We are of the opinion that the seven-day delay between Sousa's termination and the collection of his final paycheck is a reasonable period that does not terminate the employment contract between the parties. Of importance is the evidence in the record that Providence Subaru made no attempt to pay Sousa his final wages either on the day Sousa was terminated or at any other time prior to January 13. In fact, Providence Subaru held Sousa's pay until January 13, when it requested that Sousa return to Subaru to collect his check. Since January 13 was the first opportunity that Subaru gave Sousa to collect his pay and complete the employment contract, the seven-day delay in payment is reasonable, and thus the contract for employment still existed between Sousa and Providence Subaru at the time Sousa's injuries occurred.

■ Subaru, however, asserts that Sousa's filing for unemployment benefits on January 9, 1989, evidences Sousa's formal termination of the employment agreement with Subaru because the act of filing requires a proffering of one's ability to be gainfully employed and inherently sets forth that that individual is no longer employed by his or her former company. Although it is correct to assert that Sousa was holding himself out as having the

ability to be gainfully employed by filing for unemployment benefits, it is incorrect to conclude that an employee in a uncompleted employment contract cannot hold himself or herself out to others to be gainfully employed. Furthermore, the Appellate Division's holding that filing for unemployment benefits signifies a formal, irrevocable termination of the employment contract is not supported by any precedent. Therefore, under the facts of this case, Sousa's filing for unemployment benefits did not terminate his employment contract with Subaru.

■ Subaru next asserts that even if this court were to find that Sousa was an employee at the time his injuries occurred, the mere act of collecting his last paycheck was not within the scope of his employment with Subaru. Sousa urges this court to adopt the position that other jurisdictions have taken and hold that an employee who is laid off is within the scope of his or her employment if he or she collects his or her final wages within a reasonable time period upon the express request of the employer.

■ Although this is a question of first impression for this court, we are persuaded by holdings from other jurisdictions which have held that an employee is within the scope of his or her employment in collecting his or her final paycheck. *See Oliver v. Faulkner Wood Co.,* 531 So.2d 675 (Ala.Civ. App.1988); *Peter Kiewit Sons' Co. v. Industrial Commission,* 88 Ariz. 164, 354 P.2d 28 (1960); *Phillips v. Unicare Amelia Island, Inc.,* 458 So.2d 50 (Fla.Dist.Ct.App.1984); *Gunthrop–Warren Printing Co. v. Industrial Commission,* 74 Ill.2d 252, 24 Ill.Dec. 160, 384 N.E.2d 1318 (1979). Further, this holding fits the "nexus" or "causal relationship" test employed by this court in *Bottomley v. Kaiser Aluminum & Chemical Corp.,* 441 A.2d 553 (R.I.1982). In *Bottomley* we stated that

"it [is] well settled that an employee's injury is compensable if the particular facts and circumstances presented establish a 'nexus' or a 'causal relationship' between the injury and the employment. *Beauchesne v. David London & Co.,* 118 R.I. 651, 375 A.2d 920 (1977) * * *. To establish such a nexus or causal relationship,

the employee must show that his injury occurred within the period of his employment, at a place where he might reasonably have been, and while either fulfilling the duties of his employment or doing something incidental thereto or to the conditions under which those duties were to be performed." *Bottomley,* 441 A.2d at 554.

In the instant case Sousa was injured at his place of employment while collecting his . paycheck. Further, he arrived at Providence Subaru to collect his pay pursuant to Subaru's expressed instructions. Thus, Sousa was acting within the scope of his employment with Subaru in collecting his pay while at Subaru's place of business, for under the causal-relationship and nexus test set out in *Bottomley,* at the time he was injured, Sousa was employed, at his place of employment, and "fulfilling the duties of his employment or doing something incidental thereto * * *." *Id.* Although it is possible that other cases may arise wherein the employee's actions may not fully satisfy the causal-relationship necessary to support a judicial finding of activity within the scope of employment, we are persuaded that under the facts of this case Sousa's activity satisfies the nexus test of *Bottomley.*

■ The third issue this court must address is whether the Appellate Division erred in finding that an employee who was terminated and had filed for, but had yet to receive, unemployment benefits is barred from receiving workers' compensation benefits. Sousa asserts that the Appellate Division's interpretation of this court's holding in *St. Pierre v. Fulflex,* 493 A.2d 817 (R.I.1985), is misguided because of the distinguishing facts between *St. Pierre,* and the instant case. We are compelled to agree with Sousa and reverse the final decree of the Appellate Division.

In *St. Pierre,* this court held that an employee who was laid off and subsequently filed for and collected unemployment benefits was barred from receiving workers' compensation benefits. 493 A.2d at 818. As we stated in *St. Pierre,* we based our decision upon interpretation of G.L.1956 (1979 Reen-

actment) § 28–44–12 and the Legislature's intent to forbid an employee from collecting unemployment benefits and workers' compensation simultaneously. 493 A.2d at 819. However, *St. Pierre* and the case at bar are significantly distinguishable. Unlike the employee in *St. Pierre*, Sousa had not *received* any unemployment benefits prior to January 13, 1989, the date he was injured and the point at which he was entitled to receive workers' compensation benefits. Since Sousa had never actually collected any of the unemployment benefits for which he had applied, neither § 28–44–12 nor our holding in *St. Pierre* applies to the instant case. Furthermore, Sousa became ineligible for collection of the already filed-for unemployment benefits on January 13, 1989, since the injury left him unable to be employed gainfully from that time forward, thus making simultaneous collection impossible from January 13, 1989, forward. Consequently Sousa's mere filing for unemployment benefits does not preclude his right to receive workers' compensation benefits.

Finally, Subaru asks this court to take judicial notice of Sousa's separate civil claim against Silverman Associates, the owner of the building in which the injury occurred. Subaru argues that Sousa's separate civil tort action and subsequent settlement of that claim bar him from maintaining a workers' compensation claim. However, this argument has no bearing on our resolution of the issues before us. Accordingly we do not reach its merits in this opinion.

For the foregoing reasons the petition for certiorari is granted, the final decree of the Appellate Division is quashed, and the papers of the case are remanded to the Workers' Compensation Court for proceedings consistent with this opinion.

LEDERBERG, J., was not present at oral argument but participated on the basis of the briefs.