April 9, 2019

**Supreme Court**

No. 2016-6-M.P.
(13-558)

Mark D. Powers                    :

v.                    :

Warwick Public Schools.                    :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Mark D. Powers           :

v.                :

Warwick Public Schools.     :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Robinson, for the Court.** On January 12, 2016, Mark Powers petitioned this Court for issuance of a writ of certiorari to review a Final Decree of the Appellate Division of the Workers' Compensation Court (WCC), which had been issued on December 23, 2015. That decree denied and dismissed Mr. Powers's appeal, in accordance with a written decision of the Appellate Division dated December 16, 2015. This Court granted Mr. Powers's petition for a writ of certiorari on September 13, 2016.

Before this Court, Mr. Powers contends: (1) that he "should not be estopped from arguing that he was a full-time employee working part-time hours simply because a stipulation was entered in the Workers' Compensation Court stating that he was a part-time employee;" and (2) that "the average weekly wage, as calculated pursuant to [G.L. 1956] § 28-33-20 for the purpose of determining workers' compensation benefits, must include monies received by an employee from the state for hours not worked, pursuant to an approved work-sharing program under [G.L. 1956] § 28-44-69."

This case first came before the Court on September 27, 2017, pursuant to an order directing the parties to appear and show cause why the issues raised in this matter should not be summarily decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we concluded that cause had been shown, and we assigned this case to the regular calendar for further briefing and argument. We heard oral arguments on September 27, 2018.

For the reasons set forth in this opinion, we affirm the decree of the Appellate Division of the Workers' Compensation Court.

## I

## Facts and Travel

The facts of this matter are not in dispute. On December 31, 2012, Mr. Powers injured his left knee while shoveling snow during the course of his employment with the Warwick Public Schools. Due to his injury, he was unable to work from January 1, 2013 until April 3, 2013. At the time of the injury, in addition to receiving remuneration from the Warwick Public Schools, Mr. Powers was also receiving work-sharing benefits from the state under an approved work-sharing program pursuant to § 28-44-69.[1] As a result of his inability to work due to injury, he applied for workers' compensation benefits. His "average weekly wage" for workers' compensation benefits pursuant to § 28-33-20 was calculated thereafter, but that calculation did not take into account the work-sharing benefits which Mr. Powers had been receiving. On March 8, 2013, Mr. Powers filed a "claim for a trial," pursuant to G.L. 1956 § 28-35-20(d),[2] in order to challenge the calculation of his average weekly wage before the WCC.

---

[1]     The work-sharing benefits program is explained more fully *infra*.

[2]     General Laws 1956 § 28-35-20(d) provides as follows:

> "Any party aggrieved by the entry of the order by the judge may claim a trial on any issue that was not resolved by agreement at the

The parties then filed trial memoranda and agreed to a stipulation of facts before the WCC, which stated as follows:

"1. As of 12/31/12 the Petitioner was a part-time employee of the Respondent.

"2. The Employee [(Mark Powers)] was injured at work on 12/31/12.

"3. During the 26 weeks prior to the week of the injury, the employee earned wages from the employer for work performed. Also during the 26 weeks prior to the week of the injury, the Employee received unemployment compensation benefits from the State of Rhode Island, pursuant to a Work Sharing Plan in accordance with RIGL 28-44-69.

"4. The issue in this case is whether or not said unemployment compensation benefits received in the 26 weeks prior to the week of the injury should be added to said part-time wages earned in the 26 weeks prior to the week of the injury in order to calculate the average weekly wage for that injury.

"5. The amount of wages earned by the employee during the weeks 10/20/12 through 12/29/12 equals $ *2, 880.62.* * * *

"6. The amount of unemployment compensation benefits received in the 26 weeks prior to the week of the injury equals $ *8,405* which equals a supplemental wage of $*323.27*." (Emphasis in original.)

Nothing more of pertinence was submitted, and the parties rested on the day of trial. On September 25, 2013, the trial judge of the WCC issued a bench decision, in which he found that work-sharing benefits were "tantamount to unemployment compensation benefits" and were properly not included in Mr. Powers's average weekly wage. Upon Mr. Powers's appeal, the

pretrial conference by filing with the workers' compensation court within five (5) days of the date of the entry of the order, exclusive of Saturdays, Sundays and holidays, a claim for a trial on forms prescribed by the workers' compensation court. If no timely claim for a trial is filed or is filed and withdrawn, the pretrial order shall become, by operation of law and without further action by any party, a final decree of the workers' compensation court."

Appellate Division of the WCC issued a written decision on December 16, 2015, affirming the trial judge's bench decision; a final decree then entered. Mr. Powers subsequently petitioned this Court for a writ of certiorari, which this Court granted.

## II

## Standard of Review

We begin by noting that "[o]ur review of a case on certiorari is limited to an examination of the record to determine if an error of law has been committed." *DeCurtis v. Visconti, Boren & Campbell, Ltd.*, 152 A.3d 413, 420-21 (R.I. 2017) (internal quotation marks omitted). "In addition to examining the record for judicial error, we inspect the record to discern if there is any legally competent evidence to support the findings * * * below." *Id.* at 421 (internal quotation marks omitted).

In this instance our review is provided for by statute. Section 28-35-30 provides as follows:

> "(a) Upon petition for certiorari, the supreme court may affirm, set aside, or modify any decree of the appellate commission of the workers' compensation court only upon the following grounds:
>> "(1) That the workers' compensation court acted without or in excess of its authority;
>> "(2) That the order, decree, or award was procured by fraud; or
>> "(3) That the appellate division erred on questions of law or equity, the petitioner first having had his objections noted to any adverse rulings made during the progress of the hearing at the time the rulings were made, if made in open hearing and not otherwise of record.
> "(b) Review shall not be granted by the supreme court except as provided in this section, and the supreme court shall disregard any irregularity or error of the appellate division or trial judge unless it affirmatively appears that the petitioner was damaged by the irregularity or error."

- 4 -

Since there is no allegation that the Appellate Division of the WCC acted in excess of its authority in this case or that the award was procured by fraud, we are tasked with determining whether or not the Appellate Division erred on a question of law with respect to its interpretation of § 28-33-20 and § 28-44-69. This Court reviews questions of law and questions of statutory interpretation in a *de novo* manner. *Rhode Island Depositors Economic Protection Corp. v. Bowen Court Associates*, 763 A.2d 1005, 1007 (R.I. 2001); *see also Trainor v. Grieder*, 23 A.3d 1171, 1174 (R.I. 2011).

## III

## Analysis

## A

## Stipulation

We must initially address the effect of the stipulation between the parties that was entered in the WCC.

This Court has stated that "[a] stipulation entered into with the assent of counsel and their clients, relative to an evidentiary fact or an element of a claim, is conclusive upon the parties and removes the issue from the controversy." *In re McBurney Law Services, Inc.*, 798 A.2d 877, 881-82 (R.I. 2002); *see also Newport Realty, Inc. v. Lynch*, 878 A.2d 1021, 1035 (R.I. 2005). The subject of the stipulation "is no longer a question for consideration by the tribunal." *In re McBurney Law Services, Inc.*, 798 A.2d at 882. However, it is equally true that, "[a]lthough a court is generally bound by a stipulation of facts, parties cannot take away the court's responsibility to make conclusions of law and other independent findings." *Cabana v. Littler*, 612 A.2d 678, 685 (R.I. 1992); *see also Armstrong v. Polaski*, 116 R.I. 661, 666, 360 A.2d 558, 561 (1976) ("[C]ourts generally say that the resolution of questions of law is a judicial function

that should be approached uninfluenced by the agreement of the parties as to what the law is."). As such, "[c]ourts * * * are not bound to accept as controlling, stipulations as to questions of law." *T I Federal Credit Union v. DelBonis*, 72 F.3d 921, 928 (1st Cir. 1995) (internal quotation marks omitted); *see also* 73 Am. Jur. 2d *Stipulations* § 4 at 533-34 (2012) ("Parties to an action may not stipulate to legal conclusions to be reached by the court[;] * * * stipulations as to the law are invalid and ineffective.").

Specifically at issue before this Court are the statements in the stipulation relative to: (1) Mr. Powers being a "part-time employee;" and (2) Mr. Powers having received "unemployment compensation benefits" in addition to the income earned from his employer in the twenty-six weeks[3] prior to his injury. In our opinion, taking into account the above-cited precedent and the ordinary and commonsensical meaning of the words "part-time," Mr. Powers's stipulation that he was a part-time employee is clearly a factual assertion. *See State v. Bergevine*, 883 A.2d 1158, 1159 (R.I. 2005) (mem.) ("That seems to us to be the common sense of the matter; and common sense often makes good law.") (quoting *Peak v. United States*, 353 U.S. 43, 46 (1957)). As such, Mr. Powers is thus bound by that stipulation. *See In re McBurney Law Services, Inc.*, 798 A.2d at 882. Mr. Powers also implies in his brief that his stipulation to being a part-time employee was a "clear mistake of fact or an erroneous legal conclusion." However, our case law has required "fraud, mutual mistake or actual absence of consent" to modify such a

---

[3] General Laws 1956 § 28-33-20(a)(3)(i) requires the consideration of the gross wages earned by a part-time employee in the twenty-six weeks immediately prior to the week of injury for determination of the average weekly wage.

stipulation. *Id.* (internal quotation marks omitted). Accordingly, the issue of whether or not Mr. Powers was a full-time or a part-time employee is not open for consideration before this Court.[4]

Conversely, it is clear to us that the stipulation as to Mr. Powers having received "unemployment compensation benefits" is a legal conclusion to which this Court is not bound. *See T I Federal Credit Union*, 72 F.3d at 928; 73 Am. Jur. 2d *Stipulations* § 4 at 533-34. Indeed, the determination as to whether or not work-sharing benefits are akin to unemployment compensation benefits and should or should not be taken into account when determining a worker's average weekly wage is a question of statutory construction, and questions of statutory construction are questions of law. *See City of East Providence v. Public Utilities Commission*, 566 A.2d 1305, 1307 (R.I. 1989) (stating that a "dispute relat[ing] to statutory interpretation * * * is a question of law for which the Supreme Court has the ultimate responsibility"). Consequently, our analysis and conclusions are not influenced by Mr. Powers having stipulated to receiving unemployment compensation benefits.

**B**

**Work-Sharing Benefits**

We turn next to Mr. Powers's argument before this Court that the calculation of the average weekly wage which he was to be awarded by the WCC, pursuant to § 28-33-20, should have taken into account monies he received from the state pursuant to an approved work-sharing program under § 28-44-69. This is an issue of first impression in Rhode Island.

---

[4]    We note that our legal determination in this case as to whether or not work-sharing benefits are to be included in calculating the average weekly wage is not influenced by Mr. Powers's having stipulated to being a part-time employee. Section 28-33-20, which provides for the method of calculating the average weekly wage, contains one subsection applicable to full-time employees and one subsection applicable to part-time employees. However, the language on which we base this decision is identical in both subsections. *See* Parts III.B.1 and III.B.3 *infra*.

## 1. Relevant Statutory Sections

Section 28-44-69 lays out the work-sharing program in Rhode Island. The program allows an employer to avoid layoffs by reducing the hours to be worked by a specific group of employees pursuant to a work-sharing plan. Such a work-sharing plan must be approved by the Director of the Rhode Island Department of Labor and Training. *See* § 28-44-69(b)(1). The state then pays the employees some portion of the difference between their actual income from the work-sharing employer and what they would have received had they been working on a full-time basis.[5] The employer is required to continue paying health and retirement benefits as if the employee has remained a full-time employee. *See* § 28-44-69(b)(1)(v). Additionally, the program requires the affected employee to remain available to work a normal, full-time work week for the work-sharing employer. *See* § 28-44-69(g)(2). Of additional relevance to this case is the fact that the statute provides that claims for work-sharing benefits shall be filed in the same manner as claims for unemployment compensation benefits and that "[p]rovisions applicable to unemployment compensation shall apply to work-sharing claimants to the extent that they are not inconsistent with the established work-sharing provisions." Section 28-44-69(h)(6) and (7).

Also of import in our assessment of this action is § 28-33-20. Section 28-33-20 falls within the chapter of the General Laws that deals with workers' compensation benefits and provides in pertinent part as follows:

> "(a) For the purposes of this chapter, the average weekly wage shall be ascertained as follows:
>
> "(1) For full-time or regular employees, by dividing the gross wages, inclusive of overtime pay; provided, that bonuses and overtime shall be averaged over the length of employment but not in excess of the preceding fifty-two (52) week period, earned by

---

[5] The statute is not designed to be applied to seasonal, intermittent, or temporary employment. *See* G.L. 1956 § 28-44-69(b)(1)(vii).

the injured worker in employment by the employer in whose service he or she is injured during the thirteen (13) calendar weeks immediately preceding the week in which he or she was injured, by the number of calendar weeks during which, or any portions of which, the worker was actually employed by that employer, including any paid vacation time. * * *

"* * *

"(3) 'Wages of an employee working part-time' means the gross wages earned during the number of weeks so employed, or of weeks in which the employee worked, up to a maximum of twenty-six (26) calendar weeks immediately preceding the date of injury, divided by the number of weeks employed, or by twenty-six (26), as the case may be. * * * Wages shall be calculated as follows:

"(i) For part-time employees, by dividing the gross wages, inclusive of overtime pay; provided, any bonuses and overtime shall be averaged over the length of employment but not in excess of the preceding fifty-two (52) week period, earned by the injured worker in employment by the employer in whose service he or she is injured during the twenty-six (26) consecutive calendar weeks immediately preceding the week in which he or she was injured, by the number of calendar weeks during which, or any portion of which, the worker was actually employed by that employer, including any paid vacation time. * * *"

## 2. The Decision of the Appellate Division of the WCC

The Appellate Division reconciled the two just-discussed statutes by finding that work-sharing benefits are not to be considered in calculating a particular employee's average weekly wage. The Appellate Division noted that work-sharing benefits are paid for time *not worked*, and it could not equate them with a wage—the ordinary meaning of which the Appellate Division understood to be "the value received for the duties and labors which a workman performs, i.e., the value received for services actually rendered." (Internal quotation marks omitted.)

The Appellate Division further pointed out that vacation pay, overtime, and bonuses are all expressly included in the average weekly wage calculation and that the Supreme Court has held that holiday pay is also to be included in the average weekly wage calculation. The Appellate Division then stated that holiday and vacation pay are distinguishable from work-sharing benefits in that they are "incidents of employment." The Appellate Division elaborated as follows:

> "Holiday pay and vacation pay * * * are benefit[s] typically provided under an employment agreement, and [are] benefit[s] that an employee acquires over time as a result of continued employment with the same employer. * * * In this sense, they are 'earned' monies, despite the fact that the employee is not actually working on the date for which he receives the payment. * * * He earns wages from the employer for the hours he works and receives work-sharing benefits based upon the hours he is *not* working. * * * Vacation pay and holiday pay are further distinguished from work-sharing benefits because they are paid directly from the employer to the employee, as distinguished from work-sharing benefits which are paid by the State to the employee." (Emphasis in original) (internal quotation marks and citations omitted).

In conclusion, the Appellate Division held that work-sharing benefits are a type of unemployment compensation and not a form of wages to be included in the calculation of an employee's average weekly wage.

### 3. Discussion

We begin by noting that, with laudable candor, it was conceded by Mr. Powers's counsel at oral argument before this Court that traditional unemployment compensation benefits would not be used in calculating the average weekly wage. It is the contention of Mr. Powers, however, that work-sharing benefits should be distinguished from traditional unemployment compensation for the purpose of determining average weekly wage.

It is our conclusion, after careful consideration of the record in this case and the statutory sections at issue, that work-sharing benefits should not be taken into account in determining average weekly wage. We reach that conclusion on the basis of several long-standing principles of statutory construction.

When this Court engages in statutory construction, "our ultimate goal is to give effect to the purpose of the act as intended by the Legislature." *State v. Whiting*, 115 A.3d 956, 958 (R.I. 2015) (internal quotation marks omitted); *see also Zambarano v. Retirement Board of Employees' Retirement System of State*, 61 A.3d 432, 436 (R.I. 2013). In that pursuit, this Court has stated that "[i]t is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Whittemore v. Thompson*, 139 A.3d 530, 540 (R.I. 2016) (internal quotation marks omitted). It is only when we consider a statute to be ambiguous that it is incumbent upon us to "apply the rules of statutory construction and examine the statute in its entirety to determine the intent and purpose of the Legislature." *State v. Diamante*, 83 A.3d 546, 548 (R.I. 2014) (internal quotation marks omitted). In carrying out that function, we must "consider the entire statute as a whole; individual sections must be considered in the context of the entire statutory scheme, not as if each section were independent of all other sections." *Ryan v. City of Providence*, 11 A.3d 68, 71 (R.I. 2011) (internal quotation marks omitted); *see 5750 Post Road Medical Offices, LLC v. East Greenwich Fire District*, 138 A.3d 163, 167 (R.I. 2016).

Section 28-33-20 provides that the average weekly wage for both full-time and part-time employees is to be calculated using "the gross wages * * * earned by the injured worker in employment by the employer in whose services he or she is injured * * *." Section 28-33-20(a)(1) and (a)(3)(i). We are unable to say that the statute is clear and unambiguous with

- 11 -

respect to the particular issue before us in this case because the statute itself is silent as to whether or not work-sharing benefits are part and parcel of the term "wages."[6] That being said, the commonsense understanding of the term "wages" and an examination of the broader statutory schemes at issue have led us to the definite conclusion that § 28-33-20 was not intended to take work-sharing benefits into consideration in determining average weekly wage.

"[I]t is well settled that the words of a statute will be given their usual meaning." *Barrett v. Barrett*, 894 A.2d 891, 898 (R.I. 2006) (internal quotation marks omitted); *see also Pacheco v. Lachapelle*, 91 R.I. 359, 362, 163 A.2d 38, 40 (1960) ("This court has stated that in the absence of statutory definition or qualification the words of a statute are given their ordinary meaning."); 2A Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutes and Statutory Construction*, § 47:28 at 463 (7th ed. 2014) ("A fundamental canon of statutory construction instructs that, unless otherwise defined, words are interpreted to take their ordinary, contemporary, common meaning in the absence of persuasive reasons to the contrary."). The statute itself states that a wage is earned by an employee *in the employment of* the employer at issue. Section 28-33-20(a)(1) and (a)(3)(i). Moreover, "wage" is defined in Black's Law Dictionary as follows:

> "Payment for labor or services, [usually] based on time worked or quantity produced; [specifically], compensation of an employee based on time worked or output of production. * * * Wages include every form of remuneration payable for a given period to an individual for personal services, including salaries, commissions, vacation pay, bonuses, and the reasonable value of board, lodging, payments in kind, tips, and any similar advantage received from the employer." *Black's Law Dictionary* 1811 (10th ed. 2014).

---

[6] This Court has previously found this language to be free of ambiguity; however, in that instance, the Court was construing the language with respect to a completely different legal issue. *See St. Pierre v. Fulflex, Inc.*, 493 A.2d 817, 818 (R.I. 1985).

Taking into account that definition from a respected source, as well as the meaning given to the word "wage" in common parlance, we understand said word to refer to payment for labor or services rendered.[7] *See Bliss Mine Road Condominium Association v. Nationwide Property and Casualty Insurance Co.*, 11 A.3d 1078, 1084 (R.I. 2010) ("We often have looked to dictionary definitions when determining a word's ordinary meaning."); *Planned Environments Management Corp. v. Robert*, 966 A.2d 117, 123 (R.I. 2009) ("When * * * a statute does not define a word, courts will often apply a common meaning as provided by a recognized dictionary."); *see also In re Proposed Town of New Shoreham Project*, 25 A.3d 482, 513 (R.I. 2011). A wage is paid by an employer to an employee for hours actually worked. *See Cole v. Davol, Inc.*, 679 A.2d 875, 877 (R.I. 1996) (stating that workers' compensation benefits are "merely a substitute for the weekly wages an employer would have paid [the] employee but for the injury") (internal quotation marks omitted). Work-sharing benefits are the antithesis of monies paid for hours worked. They are by definition monies paid for hours *not worked*; and they are monies paid by the state, not by the employer. We are of the opinion that we simply need not go beyond this ordinary understanding of the term "wages" to reach our conclusion in the instant case.

We draw confidence in this opinion when we further note that, in view of the fact that work-sharing benefits are monies paid by the state for hours not worked, they align with traditional unemployment compensation benefits, which are likewise paid to an individual by the

---

[7]    Mr. Powers encourages us to look at the term wages as encompassing "earnings" and "earning capacity." It is his contention that we have equated the terms in our case law. *See Bailey v. American Stores, Inc./Star Market*, 610 A.2d 117, 119 (R.I. 1992) (linking average weekly wage to earning capacity and actual earnings). However, neither the *Bailey* case, nor the other cases cited by Mr. Powers, dealt with work-sharing benefits; and they do not alter our conclusion in the instant case. Regardless of how one looks at the monies at issue in this case, they remain monies paid by the state, rather than an employer, for time spent not working.

state during times when he or she is not working. We recognize that there are certain differences between traditional unemployment compensation benefits and work-sharing benefits, and we do not mean to suggest that they are one and the same. However, we deem it within the bounds of our inquiry to look to the indications in the statutory schemes before us which lead us to the conclusion that, in this context, work-sharing benefits should be treated like traditional unemployment compensation benefits. *See State v. Matthews*, 111 A.3d 390, 404 n.15 (R.I. 2015) ("[I]t is a virtual truism that all language is understandable only in context."). Of significance is the fact that § 28-44-69, which establishes the work-sharing program, is included in the statutory chapter which provides for unemployment compensation benefits—*viz.*, chapter 44 of title 28. *See Ryan*, 11 A.3d at 74 ("[W]e consider the entirety of a statute or ordinance, rather than view specific provisions in isolation."); *see also Angell v. Union Fire District of South Kingstown*, 935 A.2d 943, 947 (R.I. 2007) ("In our circumscribed role as statutory interpreters, we must look to the broader statutory landscape to overcome ambiguity."); *Barrett*, 894 A.2d at 897 ("When confronted with statutory provisions that are unclear or ambiguous, the Supreme Court, as the final arbiter, examines the statute in its entirety to glean the intent and purpose of the enactment from examining the entire statute, bearing in mind the nature, object, and arrangement of the provisions to be construed.") (internal quotation marks omitted); *Tripp v. Goff*, 15 R.I. 299, 299-300, 3 A. 591, 591-92 (1886) (stating that the Court looked to the preamble of a statute when the meaning of the statute was ambiguous).

What is more, the work-sharing benefits statute provides that claims for work-sharing benefits shall be filed in the same manner as claims for unemployment compensation benefits and further provides that provisions applicable to unemployment compensation benefits "shall apply to work-sharing claimants to the extent that they are not inconsistent with the established

work-sharing provisions." Section 28-44-69(h)(6) and (7). That statute also states that no individual shall be eligible for unemployment compensation benefits and work-sharing benefits in a total amount that is more than the maximum entitlement of the individual to unemployment compensation benefits in any benefit year; it goes on to state that any work-sharing benefits paid will be deducted from the maximum entitlement amount. Section 28-44-69(h)(2) and (3). Accordingly, it is apparent from the broader statutory schemes at issue that work-sharing benefits, at least in the context of the instant case, are to be treated like traditional unemployment compensation and should not be included in determining average weekly wage. It is clear to this Court that such benefits are not included as part of the term "wages" in § 28-33-20.

Mr. Powers contends that work-sharing benefits should be equated, not with traditional unemployment compensation benefits, but with holiday pay and vacation pay. This Court has ruled that holiday pay is to be included in the determination of average weekly wage. *Smith v. Colonial Knife Co., Inc.*, 731 A.2d 724, 725 (R.I. 1999). Likewise, vacation pay is expressly included in the average weekly wage calculation pursuant to § 28-33-20(a)(1) and (a)(3)(i). *See also Cole*, 679 A.2d at 878. However, we are unpersuaded by the comparison thereto that Mr. Powers seeks to draw. It is true that an employee does not actually work when receiving vacation or holiday pay. However, we are of the opinion that the term "wages" understandably includes vacation and holiday pay, as those are incidents of employment. Section 28-44-69(a)(4) (providing that "paid vacation and holidays * * * are incidents of employment"); *see Cole*, 679 A.2d at 878 ("Vacation pay is an incident of employment. * * * [I]t is a benefit that an employee acquires over time as a result of continued employment with the same employer."). Those benefits are earned as a function of the fact of previous and continuing service to an employer, and they are paid to the employee by the employer. Work-sharing benefits are not incidents of

employment; they are not acquired over time due to service to that employer. Rather, as we have stated previously, work-sharing benefits are monies being paid by the state for the employee not to work. As such, we are unpersuaded by Mr. Powers's attempt to liken work-sharing benefits to vacation and holiday pay.

We are not insensitive to the policy considerations which might militate in favor of broader statutory coverage so as to allow work-sharing benefits to be taken into account in determining average weekly wage, but it is our role to apply the law as it is written. "[I]t is not the function of this Court to act as a super legislative body and rewrite or amend statutes already enacted by the General Assembly." *Willis v. Omar*, 954 A.2d 126, 132 (R.I. 2008). Nor is it "our task to * * * circumvent the Legislature's intent to achieve a more temperate result." *Twenty Eleven, LLC v. Botelho*, 127 A.3d 897, 906 (R.I. 2015). If the General Assembly had intended to include work-sharing benefits in the average weekly wage calculation it would certainly have been free to do so (and it remains free to choose to do so prospectively), but we are constrained by the statute before us.

Accordingly, it is our view that work-sharing benefits received pursuant to § 28-44-69 may not be taken into account when determining the average weekly wage to be used in calculating workers' compensation benefits pursuant to § 28-33-20. We perceive no error on the part of the Appellate Division of the WCC.

**IV**

**Conclusion**

Accordingly, we affirm the decree of the Appellate Division of the Workers' Compensation Court. We remand the record to that tribunal with our decision endorsed thereon.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Mark D. Powers v. Warwick Public Schools. |
| **Case Number** | No. 2016-6-M.P. (13-558) |
| **Date Opinion Filed** | April 9, 2019 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia JJ. |
| **Written By** | Associate Justice William P. Robinson III |
| **Source of Appeal** | Appellate Division of the Workers' Compensation Court |
| **Judicial Officer From Lower Court** | Associate Judge Debra L. Olsson<br>Associate Judge George T. Salem, Jr.<br>Associate Judge Robert E. Hardman |
| **Attorney(s) on Appeal** | For Petitioner:<br><br>Christine M. Curley, Esq.<br>Stephen J. Dennis, Esq.<br>Carolyn A. Mannis, Esq. |
| | For Respondent:<br><br>Nicholas R. Mancini, Esq.<br>Francis T. Connor, Esq. |